# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 07-cv-05634-CRB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SECONDARY DISTRIBUTION OF REMAINING SETTLEMENT FUNDS AND REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |

This litigation has been completely settled since December 2019, when the Court granted final approval of the last settlement (ECF No. 1318) and entered a final judgment as to the last Defendant (ECF No. 1319). In the approximately two years after that, the claims administrator, Rust Consulting, Inc. ("Rust"), processed settlement class members' claims to the settlements and made an initial distribution of the net settlement funds on March 17, 2022. Plaintiffs now seek entry of an order authorizing a secondary distribution of the remaining uncashed net settlement funds, additional claims administration expenses, and further attorneys' fees and reimbursement of expenses in connection with settlement administration.

The Court, having reviewed Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and

1    Reimbursement of Expenses ("Motion") (ECF No. 1347), the objections by Corp Xanadu,
2    David Gould, and Kelly Overvold (together, "Objectors") (ECF Nos. 1353, 1357),
3    Plaintiffs' reply in support of the Motion (ECF No. 1356), Plaintiffs' notices regarding
4    Corp Xanadu's claim, including Rust's final determination as to Corp Xanadu's claim
5    (ECF Nos. 1370, 1371, 1374), and the Court's files and records in this matter, hereby finds
6    that the relief requested is almost entirely appropriate.
7         Accordingly, it is hereby ORDERED and DECREED that:
8         1. The Court authorizes a holdback of $50,000 for Claimant Michael Chekian[1];
9         2. The Court overrules the objections by Objector Corp Xanadu, because Corp
10   Xanadu did not establish that it had any qualifying purchases. In failing to do so, therefore,
11   not only has it failed to establish that it is entitled to share in the settlement proceeds, but it
12   has also failed to establish that it is a settlement class member. Courts considering class
13   action settlements must verify that every class member has standing, and it is the class
14   member's burden to establish standing. *In re Volkswagen "Clean Diesel" Mktg.*, No. 15-
15   MD-02672-CRB, 2022 WL 17730381, at *1 (N.D. Cal. Nov. 9, 2022) (citing *TransUnion*
16   *LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08 (2021)). Non-class members have no standing
17   to object to the settlement of a class action. *Clean Diesel, 2016 WL 6248426, at *22 (N.D.
18   Cal. Oct. 25, 2016), aff'd sub nom. Clean Diesel, 895 F.3d 597 (9th Cir. 2018), and aff'd
19   sub nom. Clean Diesel, 741 F. App'x 367 (9th Cir. 2018).*
20        3. Corp Xanadu (claim number 0000144970) filed a claim to the settlements in this
21   litigation. Rust audited Corp Xanadu's claim because the audit threshold established for
22   businesses was 1,000 or more tickets. Corp Xanadu did not support any of its claimed
23   ticket purchases with actual invoices or other corporate records. Instead, Corp Xanadu's
24   alleged 1,337 claimed tickets are supported by a one-page Affidavit, executed by the
25   alleged Secretary of Corp Xanadu, Carlos Suica, on October 2, 2020 in response to Rust's

---

[1] *See* Tr. of Remote Zoom Video Conference Proceedings 14:17–18. 16:1–3 (Nov. 4, 2022) (ECF No. 1347). If Mr. Chekian is unable to produce adequate support for his claim, the $50,000, or a relevant portion thereof, will be subject to *cy pres* distribution.

2

1   September 20, 2020 audit letter. On September 30, 2022, at the direction of the Court
2   (ECF No. 1358) and the request of Class Counsel, Rust requested additional
3   documentation or information from Corp Xanadu to establish the legitimacy of its claim.
4       4. Rust has now completed reviewing the documents and information that Corp
5   Xanadu provided by November 30, 2022 and has made a determination on Corp Xanadu's
6   claim (ECF No. 1374). Specifically, Rust determined "there is $0 due in settlement
7   benefits" to Corp Xanadu based on numerous factors, including, but not limited to:
8     (a) The 144 American Airlines itineraries that Corp Xanadu provided for claimed ticket
9         purchases between the dates of July 2015 and August 2015 did not verify that Corp
10        Xanadu was the payor of the foregoing claimed ticket purchases. Thus, even though
11        those purchases fell within a qualifying period for the settlement classes, Corp
12        Xanadu provided no documentation (*e.g.*, bank statements) that it paid for such
13        purchases[2];
14    (b) During an interview with Rich Sutton, Corp Xanadu's CEO, Mr. Sutton informed
15        Rust that the documents used to determine the number of tickets claimed for
16        American Airlines and the other airlines were destroyed. Without this information,
17        Rust was unable to verify the methodology used to determine the number of ticket
18        purchases claimed;
19    (c) Rust requested, but Corp Xanadu did not provide, the date when the foregoing
20        documents were destroyed and information to explain the difference in the records
21        maintained for the years 2002 – 2008 and 2009 – 2015, including the names of the
22        employees that maintained the records for these two time periods. Accordingly,
23        Rust was not able to verify that the documentation ever existed to substantiate the

---

[2] Rust noted that Corp Xanadu redacted the name of the payor from all itineraries that it provided to Rust, which the Court finds to be inconsistent with Corp Xanadu's obligation to demonstrate that it was the purchaser of these tickets. *See Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *10 (N.D. Cal. Feb. 20, 2015) (holding that three objectors lacked standing to challenge settlement because none had purchased the defendant's product and suffered injury).

United States District Court
Northern District of California

1     ticket purchases claimed;

2 (d) Aside from the claimed purchases on American Airlines, Corp Xanadu provided no documentation of purchases for any travel on other qualifying airlines to substantiate its claim;

(e) Rust also asked Corp Xanadu to provide any marketing material and/or magazine ads for Corp Xanadu services to confirm the nature of Corp Xanadu's business, which Corp Xanadu never provided; and

(f) After Mr. Sutton represented that Corp Xanadu never owned any property in the United States, including vehicles, Rust asked Corp Xanadu to explain why it filed a claim and received a settlement payment in *In re: Parking Heaters Antitrust Litigation* in 2019 (this indirect purchaser plaintiff settlement, which Rust administered, paid monies to those who purchased an aftermarket parking heater for their commercial vehicles between October 1, 2007 and December 31, 2012). Corp Xanadu did not provide any explanation.

5. In summary, Rust determined that Corp Xanadu is not a settlement class member because it does not have any valid claim to the net settlement funds. As Corp Xanadu is not a settlement class member, the Court need not consider its objections.

6. The Court will nevertheless address the merits of all objections raised. The Court overrules the objections by Objectors Corp Xanadu, David Gould, and Kelly Overvold for several reasons:

(a) First, the Objectors received notice of the proposed secondary distribution and filed objections, directly contradicting their argument that Plaintiffs and Rust failed to provide reasonable notice of such distribution. Furthermore, Class Counsel already provided notice of each of the three rounds of settlements, which the Court approved (ECF Nos. 1009, 1259-1, 1318). There is no authority for the proposition that a comprehensive notice program pursuant to Federal Rule of Civil Procedure 23 is required when Class Counsel and the Court are simply seeking to redistribute uncashed settlement funds as part of the claims administration process. *See, e.g., Six*

4

1      *(6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir.
2      1990) ("Federal courts have broad discretionary powers in shaping equitable
3      decrees for distributing unclaimed class action funds."); *Keepseagle v. Vilsack*, 118
4      F. Supp. 3d 98, 117 (D.D.C. 2015) (noting that "as a general matter, 'a court's goal
5      in distributing class action damages is to get as much of the money to the class
6      members in as simple a manner as possible'");

(b) Second, the Objectors received notice of Plaintiffs' request for attorneys' fees and reimbursement of expenses and filed objections, directly contradicting their argument that Plaintiffs failed to provide reasonable notice of such request. Moreover, Class Counsel already provided reasonable notice to settlement class members of their fee requests in connection with each of the three rounds of settlements (ECF Nos. 986, 1227, 1307), and the deadlines to object to these requests have long passed. The pending request for attorneys' fees and reimbursement of expenses relates to Class Counsel's lodestar and expenses in connection with settlement administration between August 1, 2019 and July 31, 2022. Additionally, this Court invited Class Counsel to submit this request. Hr'g Tr. at 9:12-16 (Jul. 6, 2022). The amount of fees requested fall below the amount described in the settlement notice for the prior settlement round;[3]

(c) Third, given the amount of the remaining uncashed settlement funds (*i.e.*, $5,448,087.41), the Objectors' contention that such funds should escheat to the states is unsupported in the Ninth Circuit and in class actions generally[4]—and is

---

[3] Class Counsel requested attorneys' fees of 33%, and the Court granted 25% in connection with the third and final round net settlement fund (ECF Nos. 1307 at 1 (motion), ECF No. 1314 at 14 (order)). The Court's award here of additional attorneys' fees from the remaining settlement funds results in a fee award of less than the 33% noticed.

[4] In *Six (6) Mexican Workers*, 904 F.2d at 1307–09, the Ninth Circuit recognized that permitting funds to escheat to the government could be appropriate in certain kinds of cases, like FLSA wage damage cases. But *Six (6) Mexican Workers* by no means held that allowing unclaimed funds to escheat was required in all class action cases. Moreover, that opinion reiterated that "Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Id.* at 1307.

5

1  nowhere to be found in any of the settlement agreements at issue. *See Hester v.
2  Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH, 2017 WL 4227928, at *2 (D. Nev.
3  Sept. 22, 2017) ("[r]edistribution of unclaimed class action funds to existing class
4  members is proper and preferred" because it "ensures that 100% of the [settlement]
5  funds remain in the hands of class members" and because "class settlements rarely
6  'pay individual class members the full value of their claims'"); William B.
7  Rubenstein, Newberg on Class Actions, § 12:30 (5th ed.) ("Redistribution is more
8  likely to bring the class members closer to that value rather than to be a windfall.").

9　　7.  Having addressed the holdback for Mr. Chekian and the objections by Corp Xanadu, David Gould, and Kelly Overvold, the Court grants the Motion.

　　8. The Court authorizes reimbursement of additional claims administration expenses totaling $125,921.00 in connection with Rust's anticipated work through the secondary distribution and a *cy pres* distribution, if necessary, at the end of the litigation.

　　9. The Court authorizes reimbursement of incurred litigation expenses totaling $4,876.85 in connection with Class Counsel's settlement administration work from August 1, 2019 through July 31, 2022.

　　10. The Court awards attorneys' fees in connection with Class Counsel's settlement administration work from August 1, 2019 through the secondary distribution and a *cy pres* distribution, if necessary, at the end of the litigation.  While Class Counsel requests an award of $1 million, the Court instead awards $500,000, for the following reasons:

　　(a) Class Counsel is correct that they should be awarded fees for their work since the last fee award.  *See* Motion for Fees in Third Round (dkt. 1307) at 13 (explicitly only seeking fees for work up to July 31, 2019).  They explain that they have "engaged in extensive motion practice to ensure the accurate and timely processing of claims and to guarantee the fair and reasonable distribution of net settlement funds across settlement class members," and that they are "actively overseeing and collaborating with Rust on various claims administration and settlement distribution." Motion at 10.  In the three years since the third round settlement

6

(from August 1, 2019 through July 31, 2022), Class Counsel have spent 617.9 hours, for a lodestar of $341,935.50. *Id.* at 3–4.

(b) Class Counsel is also correct that courts in this Circuit can count anticipated future work in calculating fee awards. *Cf. In re Volkswagon "Clean Diesel" Mktg. Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x 655, 659 (9th Cir. 2018) (no error in including projected time in cross-check). They anticipate "incurring additional lodestar through the secondary distribution . . . a *cy pres* distribution, if necessary, at the end of the litigation, any further motion practice by Mr. Chekian, including an appeal, and a further notice of post-distribution accounting." Motion at 11. They also assert that they "will not seek further attorneys' fees in this litigation after this motion." *Id.* at 4.

(c) Class Counsel do not attempt to explain how their anticipated work will add up to $658,064.50 ($1 million minus the current lodestar of $341, 935.50). One of the cases they cite, *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 856 (N.D. Cal. 2017), refers to "125 anticipated future hours" based on "time managing class members' claims." But Plaintiffs here do not attempt any such breakdown of anticipated time. Plaintiffs make this choice because they are seeking a percentage-of-recovery, not their exact lodestar. Mot. at 11. The Court awarded Class Counsel a percentage-of-recovery in each of the prior three rounds of settlements. *See generally* Order Granting Attorneys' Fees and Expenses (dkt. 1314); *see id.* at 14 (awarding 25% of the round three net settlement fund). Still, even a percentage-of-recovery analysis would benefit from some estimate of the lodestar represented by the anticipated work, in order to perform a cross-check on the percentage. See *id.* at 9 (referencing importance of lodestar cross-check).

(d) Class Counsel explain that their $1 million request amounts to 18.355% of the remaining settlement fund of $5,448,087.41. Mot. at 11. They argue that 18.355% is modest not only in terms of the remaining funds but also given all of the work

7

they have performed on this case for the past 15 years. Id. They note that they have received a cumulative negative multiplier of -0.75 based on work through July 31, 2019, which resulted in unreimbursed lodestar of $10,987,873.85, and that their unreimbursed lodestar has only increased since then. Id. (citing Castillo Decl. (dkt. 1347-2) ¶ 16). Class Counsel argue that awarding Class counsel $1 million in fees now would still result in a cumulative negative multiplier of -0.77 based on their work through July 31, 2022, and less than that considering their anticipated work. Id. (citing Castillo Decl. ¶ 17).

(e) The Court does not dispute that Class Counsel has done an excellent job on this case for many, many years. But, while 18% sounds like a low number, the Court simply does not believe that a percentage-of-recovery basis for awarding fees is appropriate. The Court already awarded Plaintiffs fees for all three rounds of settlements—i.e., the total fund amount of $104,388,254.38—that took into account factors like the results achieved, the risks of litigation, the skill and quality of the work, the contingent nature of the fee, and awards made in similar cases. See, e.g., Order Granting Attorneys' Fees and Expenses at 3, 5–8. But those factors are less applicable at this stage. Before the Court is not a new pot of money but a portion of the original $104,388,254.38. The remaining fund is $5,448,087.41 because that is how much money the uncashed checks add up to. If there were more uncashed checks and the remaining fund was $10,000,000, or $20,00,000, would Class Counsel be entitled to 18% of that? More money left in the fund is not tied to a better result by Class Counsel. Nor does more money left in the fund seem necessarily tied to more work left for Class Counsel to do. At this phase—where Class Counsel have already been compensated for the recovery they achieved for the class—the Court believes that fees should be aimed at reimbursing Class Counsel for the work they actually did, and will do, in effectuating everything post-settlement. In that case, the lodestar method is more appropriate. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Courts in the Ninth Circuit

8

award fees in common fund cases under either the 'percentage-of-recovery' method or the 'lodestar' method.").

(f) Using the lodestar method, the Court will approve an award of $500,000.00. This sum represents the current lodestar of $341,935.50, see Motion at 4, plus an additional $158,064.50 for the work on this case that Class Counsel has already done since seeking that $341,935.50 in August of 2022 (including the recent, very prompt, preparation of the proposed order upon which this order is based, see Proposed Order (dkt. 1377)), and the anticipated work that Class Counsel will continue to do to bring the case to its conclusion.

11. The Court directs Plaintiffs to pay the awarded fees and expenses from the remaining settlement fund of $5,448,087.41.

12. The Court authorizes a secondary distribution of the remaining settlement funds of $5,448.087.41, less the holdback of $50,000 for Mr. Chekian, less the additional claims administration expenses of $125,921.00 for Rust and reimbursement of litigation expenses of $4,876.85 for Class Counsel authorized by the Court above, and less the attorneys' fees of $500,000 for Class Counsel awarded by the Court above.

13. If there are any further remaining settlement funds after the secondary distribution, assuming such funds will be economically infeasible to distribute, Plaintiffs shall propose an appropriate *cy pres* recipient with approval from the Court after the check void date for this secondary distribution. At that time, Class Counsel will also provide an update to the Court regarding the final resolution of Mr. Chekian's claims.

**IT IS SO ORDERED.**

Dated: January 19, 2023

CHARLES R. BREYER
United States District Judge

9