**Nos. 25-3908, 25-4087**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JEANETTE STEVENS T/A ELM CO. and DAVID GOULD,
*Appellants-Objectors*,

v.

MEOR ADLIN, *et al.*,
*Respondents-Plaintiffs*.

Appeal from the United States District Court
for the Northern District of California, San Francisco Division
Hon. Charles R. Breyer
D.C. No. 3:07-cv-05634

## RESPONDENTS-PLAINTIFFS' OPPOSITION TO APPELLANTS-OBJECTORS JEANETTE STEVENS T/A ELM CO. AND DAVID GOULD'S OPENING BRIEFS

Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Christopher L. Lebsock
Jeannine M. Kenney
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
clebsock@hausfeld.com
jkenney@hausfeld.com

*Attorney for Respondents-Plaintiffs*

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ...................................................................................1

II. STATEMENT OF RELEVANT FACTS........................................................2

    A.    Background on the Underlying Litigation and Settlement Administration....................................................................................2

    B.    Background on Objector Elm Co.......................................................5

    C.    Background on Objector Gould .........................................................7

    D.    Background on Objectors Elm Co. and Gould's Appeals ....................8

III. LEGAL STANDARD ................................................................................10

IV. ARGUMENT............................................................................................11

    A.    Objectors Elm Co. and Gould Lack Standing to Object.....................11

    B.    The District Court Did Not Abuse Its Discretion in Entering Settlement Distribution-Related Orders...............................................14

        1.    Elm Co.'s Refusal to Respond to Rust's Audit Letter Directly Resulted in the Denial of Its Claim..........................................15

        2.    Gould Misunderstands Settlement Administration...................17

    C.    Elm Co.'s Appeal Is Defective Because A Company Must Be Represented by Counsel ...................................................................19

V. CONCLUSION........................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...................................................................10

*Bros. Keeper Ministries v. United States*,
    No. 25-1864, 2025 WL 1723174 (9th Cir. May 23, 2025) .....................19, 20

*Burke v. Barnes*,
    479 U.S. 361 (1987)...............................................................................14

*Contant v. AMA Capital, LLC*,
    66 F. 4th 59 (2d Cir. 2023) .....................................................................16

*D-Beam Ltd. P'shi v. Roller Derby Skates, Inc., ,*
    366 F.3d (9th Cir. 2004) .........................................................................19

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022).........................12

*In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*,
    33 F.3d 29 (9th Cir. 1994) ......................................................................11

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
    21 F.4th 1102 (9th Cir. 2021) ..................................................................10

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013)................................................................................11

*Ill. Brick Co. v. Illinois*,
    431 U.S. 720 (1977)................................................................................11

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ...................................................................10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................................14

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ...................................................................18

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ...................................................................12, 17

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
  926 F.3d 528 (9th Cir. 2019) ........................................................................10

*In re Optical Disk Drive Prods. Antitrust Litig.*,
  959 F.3d 922 (9th Cir. 2020) ........................................................................14

*Peterson v. Highland Music, Inc.*,
  140 F.3d 1313 (9th Cir. 1998) ......................................................................12

*School Dist. No. 1J v. ACandS, Inc.*,
  5 F.3d 1255 (9th Cir. 1993) ..........................................................................18

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
  2024 WL 810703 (9th Cir. Feb. 27, 2024), *cert. denied sub
  nom. Xanadu Corp v. Adlin*, 145 S. Ct. 278 (2024) ..............................*passim*

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
  69 F. Supp. 3d 940 (N.D. Cal. 2014), *aff'd and remanded sub
  nom. Wortman v. All Nippon Airways*, 854 F.3d 606 (9th Cir.
  2017) ..............................................................................................................3

*In re Transpacific Passenger Air Transp, Antitrust Litig.*,
  701 F. App'x 554 (9th Cir. 2017)....................................................................3

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
  No. 22-16634, 2022 WL 19569845 (9th Cir. Dec. 8, 2022) ...........................3

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)......................................................................................11

**Rules**

Fed. R. Civ. P. 23 ...............................................................................16, 18, 19

**Other Authorities**

Manual for Complex Litigation, Fourth,
  § 21.661 ........................................................................................................19

iii

iv

Digital Payments in Class Actions and Mass Torts Annual Report,
    WESTERN ALLIANCE BANK (Apr. 2025),
      https://www.westernalliancebancorporation.com/ ..........................................6

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| Elm Co. | Appellant-Objector Jeanette Stevens t/a Elm Co. |
| Elm Co. Order | May 29, 2025 Order Overruling [Elm Co.'s] "Objection Pursuant to 28 USC 1651" |
| Gould | Appellant-Objector David Gould |
| Gould Order | May 29, 2025 Order Denying [Gould's] Motion to Compel Strict Compliance with Second Distribution Order |
| Order Denying Gould Mot. to Compel | May 5, 2025 Order Denying [Gould's] Motion to Compel Prompt Compliance with Second Distribution |
| Botzet Decl. | Decl. of Joel K. Botzet in Support of Appellees-Plaintiffs' Motion for Summary Affirmance of District Court's Elm Co. Order and Gould Order |
| Elm Co. Notice of Appeal | Jeanette Stevens t/a Elm Co.'s Notice of Appeal |
| Elm Co. Obj. | Elm Co.'s Petition/Objection Pursuant to 28 USC 1651 |
| Elm Co. Reply | Elm Co.'s Reply in Support of Petition/Objection Pursuant to 28 USC 1651 |
| Gould Mot. for Recons. | Gould's Motion to Compel Strict Compliance with Secondary Distribution Order; Motion to Comply with Mandate; Motion for Reconsideration; and Objections |
| Gould Mot. to Compel | Gould's Motion to Compel Prompt Compliance with Second Distribution Order |
| Gould Notice of Appeal | Gould's Notice of Appeal |
| Gould Reply ISO Mot. for Recons. | Gould's Reply in Support of Motion to Compel Strict Compliance with Second Distribution Order; Motion to Comply with Mandate; Motion for Reconsideration; and Objections |
| Gould Reply ISO Mot. to Compel | Gould's Reply in Support of Motion to Compel Prompt Compliance with Second Distribution Order |
| Rsp. to Elm Co. Obj. | Plaintiffs' Response to Objection by Jeanette Stevens t/a Elm Co. |

v

| Rsp. to Gould Mot. for Recons. | Plaintiffs' Response to Objector David Gould's Motion to Compel Strict Compliance with Second Distribution Order; Motion to Comply with Mandate; Motion for Reconsideration; and Objections |
|---|---|
| Rsp. to Gould Mot. to Compel | Plaintiffs' Response to Objector and Claimant David Gould's Motion to Compel Prompt Compliance with Second Distribution Order |
| Rust | Rust Consulting, Inc. |
| Secondary Distribution Order | January 19, 2023 Order Granting Plaintiffs' Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses |
| Xanadu | Xanadu Corp. |

vi

## I.  INTRODUCTION

Respondents-Plaintiffs respectfully submit this answering brief in response to Appellants-Objectors Elm Co. and David Gould's Opening Briefs challenging certain decisions by the settlement administrator, Rust, in connection with the secondary distribution of remaining settlement funds in the underlying antitrust class action.[1]

Rust, with oversight by both the district court and Class Counsel, was vested with the right and obligation to only distribute class settlement funds to qualified settlement class members. The district court's orders that are the subject of these appeals did not constitute an abuse of discretion. Indeed, they were well founded in common sense and binding precedent.

Objectors' arguments are centered on Rust's decision to re-audit 17 previously approved claims after the first distribution but before the secondary distribution. Rust commenced this second audit because of information that it learned about potentially fraudulent claims from a law enforcement agency, and Rust subsequently denied Elm Co.'s claim following the conclusion of the re-audit

---

[1] Plaintiffs have filed Excerpts of Record because neither Objector filed Excerpts of Record in connection with their Opening Briefs.

Pursuant to Advisory Committee Note to Circuit Rule 30-1.1, Plaintiffs cite "Dkt." for purely background information that is undisputed and provided only for general context. all "Dkt." references are to the underlying antitrust class action, D.C. No. 3:07-cv-05634-CRB, unless otherwise noted.

process due to the company's total failure to verify its standing as a settlement class member.

Elm Co. and Gould lacked standing to object to the secondary distribution, and even today they cannot demonstrate any Article III injury that would allow for this Court to hear the appeals of their objections. Their arguments are neither new nor notable, and this Court should reject them consistent with *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2024 WL 810703, at *1-2 (9th Cir. Feb. 27, 2024) ("*Transpacific*"), *cert. denied sub nom. Xanadu Corp v. Adlin*, 145 S. Ct. 278 (2024).[2]

## II. STATEMENT OF RELEVANT FACTS

### A. Background on the Underlying Litigation and Settlement Administration

Respondents-Plaintiffs are class representatives of certified classes of persons and entities that directly purchased tickets for passenger air transportation between

---

[2] In a prior appeal involving the same underlying action, objectors-appellants Xanadu and David Gould—the same Gould in this appeal—challenged the secondary distribution of the remaining settlement funds. *See* Appellants' Corrected Opening Br., *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 23-15118 (May 23, 2023), Dkt. 11. Xanadu, like Elm Co. here, challenged Rust's re-examination of its previously approved claim, and both Xanadu and Gould contended notice of the secondary distribution was defective. *Id.* at 43-55. This Court affirmed the district court's order granting the secondary distribution and a further order denying reconsideration, holding that both Xanadu and Gould lacked standing to object and rejecting their arguments on the merits. *Transpacific*, 2024 WL 810703, at *1-2.

the United States and Asia/Oceania from certain airlines in the underlying antitrust class action filed in 2007 and fully settled in 2019.[3] After years of vigorous litigation, including a certified litigation class and multiple trips to the Ninth Circuit,[4] Class Counsel and the Classes secured $148 million in settlements, much of which came with trial looming.[5] All the settlements reached in this matter have long since been finally approved by the district court, and there are no appeals pending on any settlement approval issues.[6]

After final approval of all settlements in this matter, Rust engaged in a lengthy and laborious settlement administration process. [ER-104-23] On Plaintiffs' motion, the district court authorized the distribution of settlement funds to qualifying settlement class members on February 3, 2022.[7] The initial distribution occurred on

---

[3] *See* Pls.' Second Amended Consol. Class Action Compl. (Nov. 22, 2013), Dkt. 741; Order Granting Mot. for Class Certification (Aug. 8, 2018), Dkt. 1224.

[4] *See In re Transpacific Passenger Air Transp, Antitrust Litig.*, 701 F. App'x 554 (9th Cir. 2017); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 69 F. Supp. 3d 940 (N.D. Cal. 2014), *aff'd and remanded sub nom. Wortman v. All Nippon Airways*, 854 F.3d 606 (9th Cir. 2017); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 22-16634, 2022 WL 19569845, at *1 (9th Cir. Dec. 8, 2022); *Transpacific*, 2024 WL 810703, at *1.

[5] *See* Order Granting Motion for Final Approval and Granting Mot. for Fees (May 26, 2015), Dkt. 1009; Order Granting Final Approval of Settlements with Defendants Philippine Airlines, Inc., Air New Zealand Ltd., China Airlines, Ltd., and EVA Airways Corp. (Oct. 11, 2018), Dkt. 1259; Order Granting Final Approval of Settlement with Defendant All Nippon Airways Co., Ltd. (Dec. 3, 2019), Dkt. 1318.

[6] *See supra* note 5.

[7] *See* Order Granting Pls.' Mot. to Distribute Settlement Funds and Overruling the Objection (Feb. 3, 2022), Dkt. 1327.

March 17, 2022. [ER-092] After the initial distribution, as is typical in class action litigation, a number of claimants did not cash their checks, leaving remaining settlement funds of $5,448,087.41. [ER-087]

On Plaintiffs' motion, the district court authorized a secondary distribution of that remaining settlement funds on January 19, 2023. [ER-083-91] Certain objectors, including Gould, delayed the secondary distribution by almost two years by appealing the Secondary Distribution Order. [ER-083-91][8] Rust began preparing for the secondary distribution in late 2024 but, due to circumstances out of its control, had to delay the secondary distribution until June 27, 2025. [ER-011] During the intervening period, based on information received about a criminal investigation into false or fraudulent claims filing activity from a law enforcement agency, Rust re-examined 17 previously approved claims, including Elm Co.'s claim, because these claims aroused suspicion of potential fraud. [ER-011, ER-033]

---

[8] Specifically, objectors and claimants Xanadu Corp. and Gould appealed the Secondary Distribution Order despite Xanadu Corp.'s lack of standing. *Transpacific,* 2024 WL 810703, at *1.

This Court affirmed the district court's order, including Xanadu Corp.'s lack of standing, on February 27, 2024, and the Supreme Court of the United States denied Xanadu Corp. and Gould's petition for a writ of certiorari on October 7, 2024. *Transpacific,* 2024 WL 810703, at *1, *cert. denied sub nom. Xanadu Corp v. Adlin*, 145 S. Ct. 278 (2024).

### B.    Background on Objector Elm Co.

Elm. Co. submitted a claim to the settlement funds in the underlying antitrust class action. [ER-033] It is purportedly a Costa Rica company with a Costa Rica address[9] [ER-067]—bear in bind this case involves **U.S. originating travel to points in Asia**. Elm Co. submitted a claim for **1,782 tickets**, including 212 fuel surcharge tickets, which are U.S.-originating travel to Japan on Japan Airlines and All Nippon Airways flights between February 1, 2005 and December 31, 2007 that included a fuel surcharge. [ER-033] In response to Rust's initial audit in 2020, Elm Co. submitted a 1.5-page affidavit in support of its claim signed by a person claiming to be "Jeanette Stevens," Elm Co.'s purported "Managing Director." [ER-033] Elm Co. provided no other documentation, such as receipts showing ticket purchases, cancelled checks, credit card statements, travel itineraries, or email confirmation of ticket purchases.[10] [ER-033] Rust initially approved Elm Co.'s claim and made an initial distribution to settlement class members in March 2022. [ER-011]

In early 2025, in preparation for the secondary distribution, Rust re-examined Elm Co.'s claim. [ER-033] Elm Co.'s number of claimed tickets, particularly fuel

---

[9] The Elm Co. Objection lists its address as Elm, Apartado 10210-1000, San Jose, Costa Rica, SC 10102. [ER-067]

[10] Additionally, Elm Co. has made no attempt to explain how or why a purported Costa Rican company had so much U.S. originating travel to Japan, given Rust was also unable to find any online presence for Elm Co. or its Managing Director, Jeanette Stevens. [ER-033]

5

surcharge tickets for U.S.-originating travel to Japan, aroused suspicion given Elm Co.'s purported status as a Costa Rica company with a Costa Rica address. [ER-033] Furthermore, Rust was unable to confirm through its own investigatory efforts Elm Co.'s actual existence or business purpose, or the likelihood it purchased many hundreds of tickets for transpacific air travel. [ER-033] Additionally, Elm Co.'s address does not appear on Google Maps. [ER-033] Taken together, these facts raised questions about the legitimacy of Elm Co.'s claim. [ER-033] It is not uncommon in class actions or mass actions for fictitious entities to submit claims against a settlement fund.[11]

On March 24, 2025, Rust emailed and mailed Elm Co. an audit letter requesting additional information to validate its claim; Rust requested a response by April 24, 2025. [ER-034] This audit letter stated, "Failure to respond with the requested information by the deadline may result in ELM CO's claim being ineligible for the Secondary Distribution." [ER-034] Elm Co. failed to respond by email or mail by the deadline. [ER-034] In fact, Elm Co. never substantively

---

[11] A digital payment processor that works with settlement administrators reported over 80 million claims were filed with significant indicia of fraud in 2023 and over 48 million claims were filed with significant indicia of fraud in 2024. *See* 2025 Digital Payments in Class Actions and Mass Torts Annual Report, WESTERN ALLIANCE BANK (Apr. 2025), https://www.westernalliancebancorporation.com/sites/default/files/2025-04/2025-digital-payments-research-report.pdf (last visited Feb. 26, 2026).

responded to this audit letter whatsoever or provided any additional information to validate Elm Co.'s claim. [ER-011-12]

On May 2, 2025, Rust emailed and mailed a final determination letter to Elm Co. in which Rust denied Elm Co.'s claim to the secondary distribution due its failure to provide additional information to establish the validity of its claim. [ER-034] In response to Rust's May 2, 2025 email, Stevens replied on the same day, questioning Rust's authority to audit Elm Co.'s claim. [ER-034, ER-056-58] Rust made a secondary distribution on June 27, 2025. [ER-010-11] Elm Co. did not receive any payment from this secondary distribution. [ER-010-11]

### C.    Background on Objector Gould

Gould submitted a claim to the settlement funds in the underlying antitrust class action. [ER-012] Like Elm Co., Gould is allegedly based in Costa Rica. [ER-124] His claim included 96 tickets on various airlines, including allegedly eight *Satogaeri* (*i.e.*, literally "returning to one's hometown"—here, Japan) tickets. [ER-012] On March 17, 2022, Rust mailed Gould an initial distribution check, which he cashed on May 31, 2022. [ER-012] On June 27, 2025, Rust mailed Gould a secondary distribution check, which he cashed on August 12, 2025. [ER-012] There is no additional correspondence between Gould and Rust. [ER-012]

### D. Background on Objectors Elm Co. and Gould's Appeals

Objectors Elm Co. and Gould appeal the following orders by the district court in connection with the secondary distribution of remaining settlement funds: (1) the Elm Co. Order, which merely reaffirms that Class Counsel and Rust may re-examine suspicious claims in class action settlements [ER-005-6] and (2) the Gould Order, which simply finds that the district court was satisfied with the progress made by Class Counsel and Rust towards the secondary distribution of remaining settlement funds.[12] [ER-007]

Specifically, Elm Co. objected to Rust's audit of its claim to share in the secondary distribution on the ground that the district court allegedly "did not authorize new audits" of claims [ER-062-68, ER-023-24], which the district court expressly overruled. [ER-005-6] Elm Co. now appeals that decision. [ER-125-27] The Elm Co. Order—the district court's written decision overruling the Elm Co. Objection—provides that Rust did, in fact, have authority to audit and re-examine Elm Co's claim. [ER-005-6] Specifically, the Elm Co. Order states, "[I]t has always been this Court's understanding that Rust and Class Counsel are responsible for only

---

[12] Gould also purportedly appeals the district court's May 5, 2025 Order Denying Gould Motion to Compel. [ER-008] The deadline to appeal that order was June 4, 2025 pursuant to Federal Rule of Appellate Procedure ("Rule") 4(a)(1)(A), and Gould did not file his Notice of Appeal until June 29, 2025. [ER-124] Regardless of whether Gould timely appealed the Order Denying Gould Motion to Compel, however, he lacks standing to object, and his objection is meritless. *See infra.*

paying qualified claimants, and that the re-examination of suspicious claims is part and parcel of that responsibility." [ER-005-6] Elm Co. did not suffer any injury simply because the Court confirmed that Rust had the authority to re-audit claims. It thus lacks standing to pursue this appeal. Instead, Elm Co.'s appeal arises from Rust's subsequent decision to reject Elm Co.'s claim to participate in the secondary distribution process. This decision was a direct and immediate consequence of Elm Co.'s failure to engage in that re-audit process despite Rust's written warning that refusal to do so may result in the rejection of Elm Co.'s claim. In sum, Elm Co. invited the harm underpinning its appeal and, in doing so, it also failed to demonstrate that it had standing to object to the Elm Co. Order.

Objector Gould moved the district court for an order compelling Class Counsel and Rust to promptly make the secondary distribution. [ER-073-75, ER-069-70] The district court denied that motion. [ER-008] Gould then subsequently moved for reconsideration of that denial [ER-025-29, ER-013-17], which the district court also denied. [ER-007] Gould now appeals those denials. [ER-124] Gould's appeal is indisputably moot because Rust made the secondary distribution on June 27, 2025, which included issuing a payment to Gould on that date. [ER-010-11] Gould cashed that payment on August 12, 2025. [ER-012] Gould's appeal now focuses on Rust's reissuance of checks to four settlement class members and re-audit of 17 previously approved claims, but those decisions were within Rust's discretion

9

as the settlement administrator and any harm Gould allegedly suffered as a result of those decisions is highly speculative.

This Court should affirm the Elm Co. Order and Gould Order to bring the nearly 20-year-old underlying litigation to a close. There is simply no standing sufficient to support Elm Co. and Gould's appeals. Moreover, Class Counsel and Rust have acted in the interests of bona fide settlement class members in distributing the remaining settlement funds.

## III.    LEGAL STANDARD

"Questions of standing are . . . reviewed de novo, but underlying factual findings are reviewed for clear error." *Transpacific*, 2024 WL 810703, at *1 (citing *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 531 (9th Cir. 2019)). This Court reviews for abuse of discretion a district court's approval of a settlement distribution. *Transpacific*, 2024 WL 810703, at *1 (citing *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1110 (9th Cir. 2021). Such review is "extremely limited[.]" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011). Consequently, this Court will reverse the Elm Co. Order and Gould Order "only upon a strong showing that the district court's decision was a clear abuse of discretion." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

10

## IV.   ARGUMENT

### A.   Objectors Elm Co. and Gould Lack Standing to Object

"Every class member must have Article III standing in order to recover individual damages," and Objectors bear the burden of proving standing. *Transpacific*, 2024 WL 810703, at *1 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021)). To be a settlement class member, Elm Co. and Gould must have purchased tickets from a settling airline during the relevant period. *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977). "Simply being a member of a class is not enough to establish standing[;] [o]ne must be an aggrieved class member" to have standing to object to a settlement-related order. *Transpacific*, 2024 WL 810703, at *1 (citing *In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994) ("*In re First Capital*")). Constitutional standing requirements apply on appeal as well. *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013); *In re First Capital*, 33 F.3d at 30.

Given these basic principles of standing, Elm Co. failed to establish the right to claim a portion of the secondary distribution when Rust notified Elm Co. that it was subject to an audit to determine whether it was, in fact, a qualified claimant. In connection with the secondary distribution, Rust emailed *and* mailed Elm Co. an audit letter on March 24, 2025 requesting additional information to validate its claim by April 24, 2025. [ER-034] This audit letter stated, "Failure to respond with the

11

requested information by the deadline may result in ELM CO's claim being ineligible for the Secondary Distribution." [ER-034] Elm Co. neither substantively responded to this audit letter nor provided any additional information to validate its claim by email or mail. [ER-011-12]

While Elm Co. claims it never received Rust's March 24, 2025 audit letter by mail (Elm Co. Opening Br. at 11), it never raised this lack of notice in the Elm Co. Objection [ER-062-68] or Elm Co. Reply [ER-023-24] and thus waived this issue on appeal.[13] Elm Co. therefore cannot raise its lack of notice of the March 24, 2025 audit letter on appeal. In any event, Rust also sent this audit letter by email on the same date. [ER-034] Indeed, the email address is valid because Elm Co. later emailed Rust on May 2, 2025 from that same email address to question Rust's authority to audit Elm Co.'s claim. [ER-057]

Ultimately, Rust determined that Elm Co. was not a settlement class member and denied its claim to the secondary distribution. [ER-057-58] Elm Co. invited these consequences; indeed, these consequences necessarily followed when it failed

---

[13] This Court applies a "'general rule' against entertaining arguments on appeal that were not presented or developed before the district court." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("*Mercury Interactive*") (citing *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1321 (9th Cir. 1998)). "Although no bright line rule exists to determine whether a matter has been properly raised below, an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it." *In re Facebook Biometric Info. Priv. Litig.*, No. 21-15553, 2022 WL 822923, at *2 (9th Cir. Mar. 17, 2022) (citing *Mercury Interactive*, 618 F.3d at 992).

to participate in the audit. Elm Co. cannot establish that it has Article III standing to appeal the Elm Co. Order confirming Rust's right to audit, or that it has any right to a share of the remaining settlement funds.

Similarly, Gould cannot appeal the Gould Order (or the Order Denying Gould Motion to Compel) because he is not an aggrieved settlement class member. Rust mailed Gould an initial distribution check on March 17, 2022, which he cashed on May 31, 2022. [ER-012] Rust also mailed Gould a secondary distribution check on June 27, 2025, which he cashed on August 12, 2025. [ER-012] Gould lacks standing here as this Court ruled in connection with his prior appeal. *See Transpacific*, 2024 WL 810703, at *1 ("Gould is a class member who received and cashed his settlement distribution but '[s]imply being a member of a class is not enough to establish standing[;] [o]ne must be an aggrieved class member' to have standing to object to a settlement-related order.").

While Gould claims he was "harmed" by Class Counsel and Rust's re-issuance of initial distribution checks to four settlement class members and the re-audit of 17 previously approved claims as these acts "reduced [his] second payment" (Gould Opening Br. at 15), Gould has failed to articulate any concrete and particularized injury arising from Rust performing settlement administration tasks authorized by the district court. Gould therefore lacks Article III standing to object

13

to both the Gould Order and the Order Denying Gould Motion to Compel. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Furthermore, this Court cannot grant the relief Gould seeks—the prompt secondary distribution ***without*** the re-issuance of initial distribution checks to four settlement class members and ***without*** the re-audit of the 17 previously approved claims—because the secondary distribution has already occurred along with the re-issuance and re-audit. *See Burke v. Barnes*, 479 U.S. 361, 363 (1987) ("Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case was decided by the court whose judgment this Court is reviewing.").

### B. The District Court Did Not Abuse Its Discretion in Entering Settlement Distribution-Related Orders

Regardless of whether Elm Co. and Gould can establish standing, this Court reviews the district court's approval of Rust's re-examination of claims in connection with the secondary distribution (*i.e.*, the Elm Co. Order) and the district court's approval of the timing of the secondary distribution (*i.e.*, the Gould Order) for an abuse of discretion. The district court's orders are a proper exercise of its retained jurisdiction over the distribution of class action settlements proceeds, which is consistent with its fiduciary duty to the entire class. *See Transpacific*, 2024 WL 810703, at *1 (citing *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922,

14

929 (9th Cir. 2020) ("This duty exists independent of any objection from a member of the class.").

Based on information Rust had received about a criminal investigation from a law enforcement agency into false or fraudulent claims filing activity, Rust conducted a second audit and then acted in accordance with the power vested in it as the settlement administrator by the district court. [ER-010-11] In the Elm Co. Order, the district court confirmed, "Rust and Class Counsel are responsible for only paying qualified claimants, and that the re-examination of suspicious claims is part and parcel of that responsibility." [ER-005-6] In the Gould Order, the district court stated that it "remains satisfied with Plaintiffs' assertion that 'Plaintiffs and Rust' anticipate making' the 'distribution on or before July, 2025.'" [ER-007] The district court did not abuse its discretion in issuing the Elm Co. Order and Gould Order, which were within its retained jurisdiction over settlement distribution.

### 1. Elm Co.'s Refusal to Respond to Rust's Audit Letter Directly Resulted in the Denial of Its Claim

Elm Co.'s Opening Brief contends that because Rust initially approved its claim, it was under an obligation to make a secondary distribution even if it had reason to believe the claim might be fraudulent. *See* Elm Co. Opening Br. at 15. In other words, the rule of law Elm Co. advances here is that even if a settlement administrator erroneously pays an unqualified claimant and later comes into possession of information suggesting the claimant is not qualified, that the claims

15

administrator nevertheless must continue paying that entity, notwithstanding information suggesting that its claim is fraudulent. Elm Co. maintains Rust's re-examination of its claim violates Federal Rule of Civil Procedure 23, due process, the mandate rule, and the law of the case doctrine. *See*, *e.g.*, Elm Co. Opening Br. at 14-22. But generalized references to these rules and equitable principles cannot save Elm Co.'s appeal.

Class Counsel, Rust, and ultimately the district court have a continuing obligation to screen fraudulent claims and only pay qualifying claims; they are not required to put on blinders and pay a claim without question if they suspect fraud after initially approving a claim. *See*, *e.g.*, *Contant v. AMA Capital, LLC*, 66 F. 4th 59, 67-68 (2d Cir. 2023) (upholding the claims administrator's decision to reject a claim because the claimant failed to follow the class counsel's request to provide necessary account or trade statements to validate the claim).

While Rust initially approved Elm Co.'s claim and made an initial distribution payment to it, Rust received new information as it was preparing for the secondary distribution in late 2024 suggesting that Elm Co. was not a legitimate entity or qualified claimant. [ER-011] Specifically, Rust learned about a criminal investigation by a government law enforcement agency into false or fraudulent claims filing activity, which prompted it to re-examine 17 previously approved claims, including Elm Co.'s claim, because these claims aroused suspicion of

16

potential fraud. [ER-011, ER-033] Rust's re-examination was necessary and proper given the information it received. Elm Co.'s total failure to communicate with Rust during the re-audit process led to the denial of its claim. [ER-011-12] There was no abuse of discretion by the district court in authorizing the re-audit, which is the only basis for Elm Co.'s appeal. And Elm Co.'s failure to engage with Rust is what led to the denial of its claim.

### 2. Gould Misunderstands Settlement Administration

Similarly, Gould's Opening Brief focuses on Class Counsel and Rust's re-issuing of initial distribution checks to four settlement class members based on "exceptional circumstances" and Class Counsel and Rust's re-examination of 17 previously approved claims. *See* Gould Opening Br. at 10 (asking "this Cout to find that the payment to four claimants who did not cash their checks and the re-audit of 17 claimants violates the Second[ary] Distribution Order which stated payment would be made to claimants who cashed their initial distribution checks."). Gould suggests Class Counsel and Rust should have sought "judicial authorization to modify the Second[ary] Distribution Order." *Id.* at 12. Gould did not raise the re-issue or re-audit in the Gould Motion to Compel or Gould Reply ISO Motion to Compel [ER-073-75, ER-069-70] and thus waived these issues on appeal. *Mercury Interactive*, 618 F.3d at 992. While Gould raises these issues in the Gould Motion for Reconsideration [ER-026], the district court found that it "essentially rehashes"

the arguments in the Gould Motion to Compel and "fails to satisfy the requirements for reconsideration." [ER-007] It was therefore not a clear abuse of discretion for the district court to enter the Gould Order without specific reference to the re-issue or re-audit.[14]

Moreover, contrary to Gould's claims, the re-issuance and re-examination of claims do not constitute a "modification" of the Secondary Distribution Order. As the district court confirmed, these settlement administration decisions are "part and parcel" of Rust and Class Counsel's responsib[ility] for only paying qualified claimants." [ER-005-6] Indeed, consistent with Federal Rule of Civil Procedure 23's requirement that Class Counsel "fairly and adequately represent the interests of the class[,]" Fed. R. Civ. P. 23(g)(4), these decisions attempted to ensure only bona fide settlement class members receive a secondary distribution. In the underlying class action, the district court approved Rust as the settlement administrator. [ER-010] Class Counsel and Rust have provided extensive information regarding settlement administration and settlement distribution. [ER-104-123, ER-092-97] While courts

---

[14] A motion for reconsideration "should not be granted, absent highly unusual circumstances." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). None of those circumstances were present between the district court's entry of the Order Denying Gould Motion to Compel and the Gould Order. [ER-008, ER-007]

18

have a duty to ensure class action settlements are fair, reasonable, and adequate under Federal Rule of Civil Procedure 23, they do not scrutinize every decision made by a settlement administrator. Fed. R. Civ. P. 23(e)(2); *see also* Manual for Complex Litigation, Fourth, § 21.661 ("Judges often appoint a claims administrator or special master and describe the duties assigned in the order approving the settlement agreement."). Neither Class Counsel nor Rust were required to move the district court for approval to re-issue checks or re-examine claims in connection with the secondary distribution, as Gould contends, as these acts all fall within Rust's ordinary responsibilities as a settlement administrator.

## C. Elm Co.'s Appeal Is Defective Because the Company Must Be Represented by Counsel

In addition to the shortcomings discussed *supra*, Elm Co. has not retained counsel in this appeal, nor in its conduct below. A person allegedly named "Jeanette Stevens" submitted a claim to the settlement funds *on behalf of* "Elm Co." [ER-033] and filed a Notice of Appeal on behalf of "Elm Co." [ER-125-27]

"[C]orporations and other unincorporated associations must appear in court through an attorney." *Bros. Keeper Ministries v. United States*, No. 25-1864, 2025 WL 1723174, at *1 (9th Cir. May 23, 2025) (citing *D-Beam Ltd. P'ship*, 366 F.3d at 973-74). Stevens is a non-attorney and may not represent Elm Co. in court, and it is Elm Co. itself that is the alleged settlement class member, not Stevens, based on its claim form. [ER-011] No attorney has entered a formal appearance on behalf of Elm

19

Co. or undertaken its representation, presenting an additional reason for the Court to reject its appeal. *Id.*, at *1 (dismissing appeal because appellant Brothers Keeper Ministries failed to obtain counsel). This Court should reject Elm Co.'s appeal because it cannot proceed *in pro per*.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff-Respondents respectfully request that this Court affirm the district court's Elm Co. Order, Gould Order, and Order Denying Gould Motion to Compel and hold that Elm Co. and Gould have failed to establish standing and to present meritorious arguments.

Dated: March 2, 2026                          **COTCHETT, PITRE & McCARTHY, LLP**

*/s/ Elizabeth T. Castillo*
Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

**HAUSFELD LLP**

*/s/ Christopher L. Lebsock*
Christopher L. Lebsock
Jeannine M. Kenney
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

20

Phone: (415) 633-1908
Fax: (415) 358-4980
clebsock@hausfeld.com
jkenney@hausfeld.com

*Attorney for Respondents-Plaintiffs*

21

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

**COTCHETT, PITRE & McCARTHY, LLP**

/s/ *Elizabeth T. Castillo*
Elizabeth T. Castillo

*Counsel for Respondents-Plaintiffs*

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-3908; 25-4097

I am the attorney or self-represented party.

**This brief contains** 4,805 **words, including** 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Elizabeth T. Castillo **Date** March 2, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*